UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| JAMILA H. STEELE, | : | Bankruptcy No. 04-14597DWS |
| Debtor. | : | |
| NORTH PHILADELPHIA FINANCIAL PARTNERSHIP, | : | Adversary No. 04-0731 |
| Plaintiff, | : | |
| v. | : | |
| JAMILA H. STEELE, | : | |
| Defendant. | : | |

# MEMORANDUM OPINION

**BY: DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

The plaintiff herein North Philadelphia Financial Partnership ("NPFP") seeks to have this Court deny the discharge of its claim in the amount of $267,535.49 arising from a judgment against debtor Jamila Steele ("Debtor"). The Plaintiff claims that § 523(a)(4) (debt obtained by embezzlement), § 523(a)(2)(B) (debt obtained by fraud based on a writing), § 523(a)(6) (debt obtained for willful and malicious injury to another entity), and § 523(a)(13)(debt for payment of restitution ordered under title 18, United States Code) provide grounds for the relief it seeks. For the reasons that follow, judgment will be entered in favor of Plaintiff and against Debtor.

## BACKGROUND

On or about November 25, 1998 NPFP[1] made a loan in the amount of $278,500 (the "Loan") to or for the benefit of Horizon Management Services LLC ("Horizon"), the payment of which was guaranteed by Debtor. Complaint and Answer ¶ 6. The guarantee was secured by certain real property owned by the Debtor. Id. ¶¶ 8-9. NPFP alleges that Debtor induced it to make the Loan by misrepresenting her assets and material information during the application process. After Horizon defaulted and failed to cure, NPFP took action against Debtor under its guarantee and mortgages. Id. ¶¶ 10-15. On March 19, 2003 NPFP obtained a default judgment against Horizon and Debtor in the amount of $264,096.51. Id. ¶ 14. Subsequently it secured title to the mortgaged properties through sheriff's sales. Id. ¶ 15.

Concurrently with these civil actions, criminal proceedings (the "Criminal Proceedings") were instituted against Debtor in the United States District Court for the Eastern District of Pennsylvania, U.S. v. Cato, No. 2:02-CR-70, and on September 20, 2002 judgment was entered based on the Debtor's guilty plea to count 6 (conspiracy), 7 and 8 (theft and embezzlement from an organization receiving federal funds) and 9 (mail fraud) of the indictment. These are crimes arising under title 18, 18 U.S.C. §§ 371, 666 and 1341, respectively. Exhibit P-2. The Guilty Plea Agreement which supports the judgment is a sixteen page document signed by the Debtor and her counsel and the United States Attorney, Exhibit P-8, and was preceded by a hearing before the Honorable Jay C. Waldman, the notes

---

[1] NPFP is a federally certified community development lending institution. Complaint and Answer ¶ 1. It makes loans in the North Central Philadelphia Empowerment Zone.

-2-

of which are transcribed and made part of this record. Exhibit P-1. In that hearing the Debtor acknowledged under oath the truth of the specific evidence the United States would have proven at a trial but for the guilty plea. In the sentencing phase of that criminal proceeding, the court imposed a nine month imprisonment and three years supervised release as well as restitution payable to NPFP. Exhibit P-2.

On April 4, 2004 the Debtor filed a petition under Chapter 7 of the Bankruptcy Code. At the time NPFP, which had foreclosed on Debtor's mortgaged properties to partially satisfy its judgment, was in the process of a fair market value proceeding in order to establish the amount of its deficiency judgment. That action was stayed by the Chapter 7 filing. Thereafter NPFP filed the Complaint in this Court seeking to have its debt in the amount of $267,535.49 plus additional interest and costs determined to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(2), (a)(4) and (a)(6).[2]

On May 3, 2005 trial was held on the Complaint. Testimony was provided by the Debtor and Margaret Agnes Cobb, Plaintiff's Executive Director. At trial, Plaintiff made an

---

[2] Subsequently Plaintiff filed a Motion for Summary Judgment ("SJ Motion") in connection with the claims made under §§ 523(a)(2)(B) and (a)(4) which was denied on January 28, 2005. North Philadelphia Financial Partnership v. Steele (In re Steele), 2005 WL 281154 (Bankr. E.D. Pa. January 28, 2005) ("SJ Opinion"). I concluded that the under the principle of collateral estoppel, the Debtor was bound by the findings from the Criminal Proceedings. However, while these facts established that the Debtor committed an embezzlement, they did not connect the embezzlement to the amount of the claim for liability under § 523(a)(4). I also found that all the facts necessary to establish the elements of § 523(a)(2)(B) were found except for reliance. As there were genuine issues of material fact pertaining to the reasonableness of NPFP's reliance on Debtor's representations, summary judgment was not granted on the § 523(a)(2)(B) count either. The § 523(a)(6) count was not at issue in the SJ Motion.

oral motion to amend the Complaint to include an additional ground of non-dischargeability, i.e., § 523(a)(13) (the "Amend Motion").[3] Counsel's proffer at trial in support of the oral motion was that subsequent to the final pretrial hearing, the U.S. Attorney was contacted regarding her availability to testify at trial[4] regarding the judgment and amount of restitution ordered. At that time, Plaintiff's counsel was advised that a transcript ("Sentencing Transcript") from the sentencing hearing held on September 20, 2002 was available. According to Plaintiff, the Sentencing Transcript, Exhibit P-3, makes clear that restitution was awarded in the full amount of the judgment, a fact in dispute and not capable of

---

[3] Because the request was made at trial, I directed Plaintiff to file a memorandum setting forth the basis of its motion so as to allow Debtor time to consider the request and offer any opposition. On May 13, 2005, a Memorandum in Support of the Motion of North Philadelphia Financial Partnership to Amend Its Complaint to Include 11 U.S.C. § 523(a)(13) as an Alternative Theory of Relief ("Plaintiff's Memo") was filed. Debtor filed no response thereto and thus there is no claim of prejudice from the amendment. I agree with Plaintiff's recitation of the relevant legal principles that govern this request. Plaintiff's Memo at 5. Fed.R.Bankr.P. 7015(a) (incorporating Fed.R.Civ.P. 15) permits amendment to pleadings to be made with leave of court and directs the court to freely grant such leave when justice so requires. Moreover if the amendment merely adds another legal theory of the action or adds another claim arising out of the same transaction, the amendment should relate back to the original pleading. Fed.R.Bankr.P. 7015(c). The proposed amendment arises out of the same occurrence and merely adds another theory of non-dischargeability. Moreover, when issues not raised by the pleadings are tried by implied consent, the pleadings shall be treated as may be necessary to conform to the evidence. Fed.R.Bankr.P. 7015(b); Southeastern Sprinkler Co., Inc. v. Meyertech Corp. (In re Meyertech Corp.), 831 F.2d 410 (3d Cir. 1987). Plaintiff elicited testimony at trial after making the oral motion to amend which was in furtherance of this claim and Debtor did not object. Based on the these procedural principles as applied, the oral amendment is granted. See First American Title Ins. Co. v. Lett (In re Lett), 238 B.R. 167, 188 (Bankr. W.D. Mo., 1999) (complaint deemed amended by implied consent to add grounds under § 523(a)(6) given acquiescence to evidence in support of that claim); ITT Financial Services v. Rath (In re Rath), 1990 WL 359397, at *1 (Bankr. N.D. Ohio, Dec. 28, 1990) (amendment to add grounds under § 523(a)(2)(A) allowed in order to conform the pleadings to the evidence).

[4] Karen L. Grigsby and Linda Dale of the U.S. Attorneys' Office were identified as potential Plaintiff's witnesses in the Joint Pretrial Statement.

resolution from the face of the documents Plaintiff had discovered to date.[5]  Section 523(a)(13) then presents an additional basis for claiming non-dischargeability, and the Sentencing Transcript is offered as additional evidence to explain the internal inconsistency in the Criminal Judgment which is relevant to the § 523(a)(13) claim.

**DISCUSSION**

While the Plaintiff asserts four different bases for denial of the discharge of Debtor's obligation to it, I will turn first to 523(a)(13) which is the simplest to apply.  Effective September 13, 1994, § 523 was amended to add an exception to discharge for "any payment of an order of restitution issued under title 18, United States Code."[6]  11 U.S.C. § 523(a)(13) (1998).  As noted above, the Criminal Judgment makes several references to the restitution award.

    1. On the page titled "Additional Supervised Release Terms," it states:

The defendant shall <u>make restitution to the victim by transferring title to the Powelton Avenue properties for a credit of $90,000 and make restitution payments totaling $30,000</u> in equal monthly installments over three years of supervised release.

---

[5]  In a footnote to the SJ Opinion, I noted that the Criminal Judgment "document is facially inconsistent.  While it sets the restitution at $120,000 consisting of a $90,000 credit for properties transferred plus $30,000 payable in equal monthly installments over the three years of supervised release, it also notes that NPFP's loss is found to be $279,789.27 and that amount also is ordered as restitution."  See Exhibit P-2 ("Criminal Judgment").  As the § 523(a)(13) claim was not part of the case, the supposed inconsistency was not material to that decision.

[6]  Previously restitution orders that ran in favor of crime victims were dischargeable because § 523(a)(7) only excepted from discharge restitution orders payable to or benefiting governmental units.  In re Rashid, 210 F.3d 201 (3d Cir. 2000).

2. On the page titled "Criminal Monetary Penalties," it states:

The defendant shall pay the following total criminal monetary penalty in accordance with the schedule of payments set forth in Part B: assessment- $400.00; fine -$  ; <u>restitution- $120,000</u>.

Paragraph 3 states that NPFP is the payee; the total amount of loss is $279,789.27 and the <u>amount of restitution ordered is $279,789.27</u>.

3. On the page titled "Schedule of Payments," it states:

The special assessment of $400.00 is due immediately. The defendant shall make <u>restitution to the victim by transferring title to the Powelton Avenue properties for a credit of $90,000 and pay $30,000</u> over the term of the supervised release in equal monthly installments.

4. On the page titles "Statement of Reasons, it states:

Fine Range $1,000 to $40,000
Fine waived or below the guideline range because of inability to pay
    <u>Amount of restitution $279,789.27</u>

Exhibit P-2 (emphasis added).

According to Debtor's testimony, the amount of restitution ordered was $120,000. In response, Plaintiff showed her the transcript of her sentencing hearing at which the reasoning underlying the entry of the Criminal Judgment was set forth. Debtor acknowledged that her attorney advised her that she would have to pay the full amount back and that he was going to propose that she do so through a Chapter 13 case and after bankruptcy if necessary. However, she contends that he made those representations to secure as light a sentence as possible for her by urging the court to let her remain in the community to work and repay her obligation. Presumably the fact that she was given jail time provides the basis for her disavowal of the commitment to repay. What impact this had

on the court is not clear. What is clear is that the judge ordered restitution of $279,789.27 because, in his own words, the law required him to do so.[7] Having done so, he then distinguished the mandatory restitution ordered and the restitution she could realistically pay which supported a schedule of payments consistent with her financial resources. The result was the $120,000 restitution payment schedule which when reduced by the $90,000 credit, required her to pay $10,000 per year in equal monthly installments over the three years of her supervised release. The Criminal Judgment and Sentencing Transcript are silent as to the restitution obligation after the $30,000 was paid.

While at first blush appearing to contain an internal inconsistency regarding the restitution amount, the Criminal Judgment is understood by reference to the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A. This is the law to which Judge Waldman presumably referred when he stated that he was required to enter a restitution order equal to the full amount of NPFP's loss. In United States v. Latimer, 101 Fed.Appx. 370 (3d Cir. 2004), the Third Circuit in a non-precedential opinion set forth the well established law:

> Enacted in 1996, the Mandatory Victims Restitution Act ("MVRA") substantially amended the restitution provisions in the Victims Witness Protection Act ("VWPA"), 18 U.S.C. § 3663 et seq. Courts previously had

---

[7] The judge states:

> Now, I am required by law to enter an order in the full amount and I will, but you know based on everything that has been presented here to me, I think the actual proper schedule would be one that calls for equal monthly installments totaling $30,000.

Exhibit P-3 at 43.

-7-

> discretion in ordering restitution. <u>United States v. Coates</u>, 178 F.3d 681, 683 n. 3 (3d Cir.1999). But the "MVRA makes restitution mandatory for certain crimes ... and <u>requires district courts to order the payment of restitution in the full amount of the victim's losses 'without consideration of the economic circumstances of the defendant.'"</u> <u>Id.</u> at 683 (*quoting* 18 U.S.C. § 3664(f)(1)(A)).
>
> In fact, 18 U.S.C. § 3663A is entitled "Mandatory restitution to victims of certain crimes." Section 3663A(a)(1) states that a court "shall order" restitution if the defendant is convicted of an offense "described in subsection (c)." This subsection includes "any offense committed by fraud or deceit." 18 U.S.C. § 3663A(c)(1)(A). By its very nature, Latimer's conviction under 18 U.S.C. § 1920 ("False statement or fraud to obtain Federal employee's compensation") is an offense committed by fraud or deceit.

<u>Id.</u> at 371 (emphasis added). Similarly Debtor's conviction under 18 U.S.C. §§ 371 (conspiracy), 666 (theft and embezzlement from an organization receiving federal funds and 1341 (mail fraud) are crimes of fraud and deceit such as are contemplated to be covered by the VWPA which makes restitution mandatory for any offense in which an identifiable victim has suffered a pecuniary loss as has NPFP. 18 U.S.C. § 3663A(c)(1)(B).

Section 3664 of the MVRA which sets forth the "Procedure for issuance and enforcement of order of restitution" further supports the conclusion that the full amount of the loss, not $120,000, is the restitution amount and harmonizes the references to the lesser number. Subsection (f)(1)(A) states:

> In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant.

18 U.S.C. § 3664(f)(1)(A). A victim named in a restitution order is entitled to have a judgment entered in the amount of the victim's loss as set forth in the Schedule in the Total

Amount of Loss column in the Criminal Judgment form. 18 U.S.C. § 3664(m)(1)(B); United States v. Collazo, 84 F.Supp.2d 607, 609 n. 1 (E.D. Pa. 2000). In this case, that amount is $279,789.27. However, upon determining the amount of restitution, the court is then required to specify the manner in which restitution is to be paid taking into account the financial resources, projected earnings and financial obligations of the defendant. 18 U.S.C. § 3664(f)(2).[8] Notably the restitution order may direct the defendant to make nominal periodic payments if the court finds that the economic circumstances of the defendant do not allow the payment of the full amount of the restitution order in the foreseeable future under any reasonable schedule of payments. 11 U.S.C.§ 3664(f)(3)(B).[9] Apparently Judge Waldman made such a determination before ordering the equal installments of $30,000 over three years.

In short, I conclude that payment of the foregoing restitution order issued under title 18 meets the statutory requirement for exception to the debtor's discharge. While the Criminal Judgment is silent as to the payment schedule after the three years of Debtor's supervised release, it is clear from the statute that payment according to the fixed schedule does not satisfy the restitution obligation ordered as the Debtor contends. Not only is the victim allowed to record a judgment for the full amount of the order, 18 U.S.C. § 3664(m)(1),

---

[8] Indeed failure to complete this second step is a basis for vacating the restitution order. United States v. Coates, 178 F.3d 681, 683-84 (3d Cir. 1999).

[9] The defendant is also required to notify the court and the Attorney General of any material change in her economic circumstances that might affect the defendant's ability to pay restitution. Upon receipt of such notification, the court on its own motion or any party may adjust the schedule or require immediate payment in full, "as the interests of justice shall require." 18 U.S.C. § 3664(k).

but the judgment may be immediately enforced against all property of the defendant with certain exceptions not relevant here. 18 U.S.C. § 3613(a) and (f). See United States v. James, 312 F.Supp. 2d 802, 805 (E.D. Va. 2004) (court's establishment of monthly payment schedules as alternative to immediate payment did not preclude garnishment proceeding against retirement accounts).[10] Additionally the court can require the entire amount to be paid immediately upon disclosure of changed circumstances. 18 U.S.C. § 3664(k). From this statutory scheme, I hold that the restitution referred to in § 523(a)(13) is the amount of the Criminal Judgment, i.e., $279,789.27, not the payment plan aggregating $120,000.

I am unable on this record to fix the restitution amount as of the current date nor need I do so to provide NPFP with the relief it seeks. See Michener v. Brady (In re Brady), 234 B.R. 652, 663 (Bankr. E.D. Pa. 1999) (Bankruptcy courts are reluctant to liquidate claims in nondischargeability proceeding, preferring instead, unless it is necessary to do otherwise, to confine their decisions to declarations of dischargeability and to allow courts of general jurisdiction to undertake liquidation of such claims) (citing In re Clayton, 195 B.R. 342, 345-46 (Bankr. E.D. Pa. 1996)). See also In re Shapiro, 188 B.R. 140, 149 (Bankr.E.D.Pa.1995);

---

[10] In a 2001 report, the General Accounting Office noted that the payment schedules set by judges can affect the collection efforts because of the U.S. Attorney's belief that collection efforts other than recording of liens are precluded until an offender is released from probation. In a survey of 140 random cases, in the cases where the judges stipulated payment terms, the U.S. Attorney typically waited for the end of probation before performing collection efforts such as searching for and liquidation of assets. Report to the Ranking Minority Member of the Permanent Subcommittee on Investigations, Committee on Governmental Affairs of the United States Senate, Criminal Debt Collection, GAO-01-664 (July 2001) at 36-37. While the focus of the report was the "lost opportunity" to realize collection of the restitution amounts due to this deference to the court's schedule of payments, it makes clear that collection efforts after the probation period are routinely pursued.

In re Stelweck, 86 B.R. 833, 844-45 (Bankr.E.D.Pa.1988)).[11] It is sufficient to conclude that the statutory obligation for restitution in the amount of NPFP's loss is non-dischargeable. Having so concluded, I need not address the other grounds of non-dischargeability pled.

An Order consistent with this Memorandum Opinion shall be entered.

*Diane W. Sigmund*

DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

Dated: August 15, 2005

---

[11] I do not know the basis of NPFP's demand in the Complaint for a declaration that its debt is $267,535.49. Whether Debtor has produced some evidence of payments made, Exhibit 12, it is not clear whether the value of the foreclosed properties has been applied to reduce the claim. Since this is a no-asset case, there is no proof of claim required to be filed and the claim will not be adjudicated in this forum. Presumably if NPFP seeks to collect the debt, the Debtor will have the opportunity to defend by presenting evidence of payments made or property transferred to reduce the amount.

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| JAMILA H. STEELE, | : | Bankruptcy No. 04-14597DWS |
| | : | |
| Debtor. | : | |
| | : | |
| NORTH PHILADELPHIA FINANCIAL PARTNERSHIP, | : | Adversary No. 04-0731 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JAMILA H. STEELE, | : | |
| | : | |
| Defendant. | : | |

# **O**RDER

**AND NOW**, this 15th day of August 2005, upon consideration of the Complaint of Plaintiff herein North Philadelphia Financial Partnership ("NPFP"), seeking to have this Court deny the discharge of its claim in the amount of $267,535.49 arising from a judgment against debtor Jamila Steele ("Debtor").

**And** after notice and trial, and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED** that:

1. Judgment is entered for Plaintiff NPFP and against Debtor Jamila H. Steele;

Case 04-00731-dws    Doc 24    Filed 08/15/05    Entered 08/15/05 15:29:46    Desc Main
Document      Page 13 of 13

In re Jamila H. Steele - Bankruptcy No. 04-14579DWS
North Philadelphia Financial Partnership v. Jamila H. Steele - Adv. No. 04-0731

2. The claim of NPFP for restitution equal to NPFP's actual loss as ordered by the Criminal Judgment (i.e. $ 279,789.27) is non-dischargeable pursuant to 11 U.S.C. § 523(a)(13).

_____
DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

Copies to:

Daniel P. Mudrick, Esquire
MUDRICK & ZUCKER, PC
One Montgomery Plaza, Suite 702
Norristown, PA  19401

Rasheena Ann Harris, Esquire
DUANE MORRIS, LLP
4200 One Liberty Place
Philadelphia, PA  19103

Dave P. Adams, Esquire
Office of the U.S. Trustee
833 Chestnut Street, Suite 500
Philadelphia, PA 19107